*404 BOGGS, Chief Judge,
dissenting.
The court’s opinion in this case correctly identifies the governing law and properly states the standard of review. However, I respectfully disagree with the court’s conclusion. I would hold that the bankruptcy court clearly erred in finding that the recipient of insurance payments made within the statutorily mandated grace period failed to prove by a preponderance of the evidence that “the transaction was not so unusual as to render it an aberration in the relevant industry.” Luper, 91 F.3d at 818.
American Medical Security did present three pieces of evidence:
(A) that this insurance company habitually received payments within the 81-day grace period;
(B) that such a grace period is mandated by statute in the state of Michigan; and
(C) that a few years earlier another major insurance company also had such grace periods in its contracts.
Nathan did not present any evidence that any Michigan insurer issued policies without grace periods, or that payments within the grace period are an aberration. The only question is whether AMS’s evidence was sufficient to satisfy the fairly relaxed “preponderance” standard. While an evidence maven could certainly have asked for more airtight testimony (perhaps from an insurance-law professor, or an industry analyst), I believe that AMS’s evidence shows that the existence of the grace period accords with ordinary business terms, and that common knowledge and common sense can do at least a bit of additional work in establishing that a payment made within an available grace period is not an aberration.
As a general proposition, businesses generally do not give up their own money by making payments significantly in advance of the time that adverse consequences would apply. For that reason, we clearly should not require substantial proof that it is not an aberration for a debtor to make a transfer on the last day of a “regular” payment period. The debtor is simply acting rationally by taking advantage of the time-value of money for as long as it can. Yet there is no legally cognizable difference in the consequences attaching to a payment made on the last day of a “regular” payment period and to a payment made during a grace period.
It is instructive that, in the extensive discussion in the court’s opinion of why a payment made during the grace period is “late” rather than “timely,” there is no reference to the fact that those terms are not what is at issue in § 547(c)(2)(C). It does not matter whether the payment was late; it matters whether it was an aberration in the insurance industry. I believe that AMS’s evidence, combined with the common-sense conclusion that it is good business to avail oneself of grace periods when they are available, sufficiently demonstrates that the payments it received were not aberrant.